UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KEVIN M. RICH,

                           Plaintiff,

            V.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

**REPORT AND
RECOMMENDATION**

09-CV-1251
(GTS/VEB)

## I. INTRODUCTION

In December of 2005, Plaintiff Kevin M. Rich applied for Disability Insurance Benefits ("DIB") under the Social Security Act. There is no dispute that Plaintiff is disabled under the Act due to Asperger syndrome, a learning disability, and vertigo. The issue presented in this case is whether Plaintiff met the insured status requirements of sections 216 (i) and 223 of the Social Security Act during the relevant time period. The Commissioner of Social Security concluded that Plaintiff did not have sufficient quarters of coverage to satisfy the insured status requirements and, thus, found that Plaintiff was ineligible for DIB. Plaintiff filed this action seeking judicial review of the Commissioner's decision under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On December 22, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 24).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for DIB on April 5, 2005, alleging disability beginning on March 15, 2002. (T at 126-33).[1]  The application was denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on January 17, 2007, in Syracuse, New York before ALJ Robert Gale.  (ST at 345).[2]  Plaintiff appeared, along with his attorney, Marianne Brown, Esq., and testified. (ST at 350-72).  Plaintiff's mother, Sandra Rich, also testified. (ST at 373-85).

On February 20, 2007, ALJ Gale issued a decision finding that Plaintiff had been disabled, as defined under the Social Security Act, from March 15, 2002, through the date of his decision. (T at 36-41).  The ALJ further concluded that Plaintiff met the insured status requirements of the Act through December 31, 2010. (T at 38).

Before paying any benefits, the Commissioner reviewed Plaintiff's earnings records and determined that Plaintiff's posted earnings for the years 2002-2005 were not wages paid pursuant to employment. (T at 94).  As a result of this determination, Plaintiff was found to be uninsured and ineligible to receive DIB. (T at 67-80).  On April 23, 2007, the Commissioner referred the question of Plaintiff's entitlement to DIB to the Social Security Appeals Council. (T at 73).

On August 3, 2007, the Appeals Council notified Plaintiff that it intended to change ALJ Gale's decision insofar as the ALJ had awarded DIB, on the grounds that Plaintiff's

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 7).

[2]Citations to "ST" refer to the Supplemental Transcript. (Docket No. 10).

earnings from 2002 to 2005 were not the result of *bona fide* employment and, thus, Plaintiff was uninsured. (T at 81-85).  Plaintiff's counsel requested reconsideration and, on September 7, 2007, the Appeals Council issued an Order Remanding the Case to the ALJ. (T at 100-102).

ALJ Gale conducted a further administrative hearing on June 20, 2009.  Plaintiff appeared with his attorney and testified. (ST at 408-17).  Plaintiff's father, Charles W. Rich, III, also appeared and testified. (ST at 389-408).

On January 27, 2009, the ALJ issued a decision finding that Plaintiff was not fully insured for purposes of DIB and was therefore not entitled to such benefits. (T at 24-30). The ALJ's decision became the Commissioner's final decision on September 10, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 7-11).

Plaintiff, acting *pro se*, timely commenced this action by filing a Complaint on November 9, 2009. (Docket No. 1).  The Commissioner interposed an Answer on May 17, 2010. (Docket No. 14).  On June 23, 2010, Jaya Shurtliff, Esq., appeared as Plaintiff's counsel. (Docket No. 16).  Plaintiff filed a Brief in support of the action on September 16, 2010.  (Docket No. 19).  The Commissioner filed a Brief in opposition on December 1, 2010. (Docket No. 22).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted, Plaintiff's motion be denied, and that judgment be entered in favor of the Commissioner.

**III. DISCUSSION**

**A.      Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must

4

afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir.1984).

To be eligible for DIB, a claimant must be "insured for disability benefits." 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1). An applicant's "insured status" is generally dependent upon a ratio of accumulated "quarters of coverage" to total quarters. 42 U.S.C. § 423(c)(1)(B). "Quarters of coverage" include quarters in which the applicant earned certain amounts of wages or self-employment income. 20 C.F.R. §§ 404.101(b), 404.140-404.146; <u>see</u> <u>also</u> <u>Arnone v. Bowen</u>, 882 F.2d 34, 37 (2d Cir. 1989); <u>Batchelder v. Comm'r of Social Sec.</u>, No. 07-CV-00354, 2009 WL 1559815, at *7 (N.D.N.Y. June 3, 2009).

**B.     Analysis**

      **1.     Commissioner's Decision**

In his initial decision, issued on February 20, 2007, the ALJ determined that Plaintiff had the following impairments considered "severe" under the Social Security Act: Asperger syndrome, a non-verbal learning disability, and vertigo. (T at 38).  The ALJ concluded that Plaintiff did not have the residual functional capacity to perform any past relevant work. (T at 40).  Considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that there were no jobs that existed in significant numbers in the national economy that Plaintiff can perform. (T at 40).  As such, the ALJ found that Plaintiff had been under a disability, as defined under the Act, from March 15, 2002, through the date of his decision. (T at 41).

After further administrative proceedings and a second hearing, the ALJ issued his second decision on January 27, 2009.  In that decision, the ALJ found that Plaintiff did not have a "bona fide" employment relationship with his putative employer, C.W. Rich, Inc. ("C.W. Rich"), at any time after August 2001. (T at 29).  The ALJ thus concluded that Plaintiff's earnings from the years 2003 through 2006 were properly expunged from his earnings record. (T at 29).  This expungement, in turn, rendered Plaintiff not fully insured within the definition of the Social Security Act. (T at 29).  Accordingly, the ALJ determined that Plaintiff was not entitled to DIB. (T at 30).  As noted above, the ALJ's decision became the Commissioner's final decision on September 10, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 7-11).

### 2.    Plaintiff's Claims

As discussed above, there is no dispute that Plaintiff is disabled.  The issue presented is whether he met the insured status requirements under Sections 216 (i) and 223 of the Social Security Act.

Plaintiff argues that the ALJ erred by finding that Plaintiff did not meet those requirements.  Specifically, Plaintiff contends that his employment with C.W. Rich (a family business) was a "bona fide" employment relationship; that the ALJ failed to properly develop the record; and that the ALJ erred in assessing the credibility of Plaintiff and his father.

A claimant meets the insured status requirements of the Act if he or she has sufficient "quarters of coverage."  20 C.F.R. § 404.130 (c).  A "quarter" refers to the four three-month periods that make up a calender year. 20 C.F.R. § 404.102.  A "quarter of coverage" is a quarter in which the claimant was paid at least a threshold amount of

6

"wages." 42 U.S.C. § 413 (a)(2)(A)(ii).  The term "wages" is defined as "remuneration paid to [the claimant] as an employee for employment." 20 C.F.R. § 404.1041 (a).

The term "employee" is defined as a person who has the status of employee under the "usual common law rules." 42 U.S.C. § 410(j)(2). Under the applicable regulations, a claimant will be considered a "common law employee" if the person identified as the claimant's employer had the capacity to tell the claimant "what to do and how, when, and where to do it." 20 C.F.R. § 404.1007(a).

Specifically, the regulations provide as follows:

> In general, you are a common-law employee if the person you work for may tell you what to do and how, when, and where to do it. The person or firm you work for does not have to give these orders, but needs only the right to do so. Whether or not you are a common-law employee is not always clear.

20 C.F.R. § 404.1007(a).

Among the factors that may be considered when determining whether a "bona fide" employment relationship existed: (1) whether the employer had the ability to fire the claimant; (2) whether the employer furnished claimant with tools or equipment and a place to work; (3) whether the claimant received training from the employer or was required to follow that person's instructions; (4) whether the claimant was required to do the work himself/herself; (5) whether the claimant hired, supervised, or paid assistants (unless he or she was employed as a foreman, manager, or supervisor); (6) whether the employer set the hours of work, required full-time work, or restricted claimant from doing work for others; (7) whether the employer paid business or traveling expenses; and (8) whether the claimant was paid by the hours, week, or month. 20 C.F.R. § 404.1007(b).

In this case, the ALJ concluded that Plaintiff did not have a bona fide employment

relationship with C.W. Rich at any time after August 2001. (T at 28).  This Court finds that the ALJ's conclusion in this regard was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson</u>, 402 U.S. at 401.  The evidence relating to Plaintiff's employment status may be summarized as follows:

### a.    Written Statements

In a disability report completed in July of 2005, Plaintiff stated that he was not working and had stopped working on March 15, 2002. (T at 147).  In a work history report completed at the same time, Plaintiff averred that his last employment ended in March 2002. (T at 153).  In a January 2007 questionnaire, Plaintiff denied working since his alleged onset date of disability (*i.e.* March 15, 2002). (T at 192).  In a statement signed on March 6, 2007, Plaintiff explained that he "quit" his employment in 2001 "due to conflict." (T at 196).  Plaintiff further stated that he was "left on the company payroll" to "maintain [his] group health insurance." (T at 196).  Although Plaintiff was paid for 20 hours a week, he had not worked those hours due to his medical problems. (T at 196).

In a handwritten statement provided in March of 2007, Charles W. Rich, Plaintiff's father and the principal of C.W. Rich, stated that Plaintiff had "been paid weekly to maintain health insurance coverage" with C.W. Rich. (T at 197).  However, Mr. Rich explained that Plaintiff had "not worked at any CW Rich office or construction project after" August of 2001. (T at 197).  In a statement signed on March 5, 2007, Mr. Rich certified that his son's "employment duration was from January 2000 to approximately August 2001." (T at 198).

### b.    Testimony at Initial Hearing

During the initial hearing on January 17, 2007, Plaintiff testified that his last employment was with C.W. Rich, his family's company. (T at 353). Plaintiff explained that he worked at C.W. Rich for approximately a year and half, with the employment ending in "the first few months of 2001." (T at 353). After discussing the conclusion of his employment with C.W. Rich, Plaintiff had the following exchange with the ALJ:

> Q:    Have you worked at all since then?
> A:    In an actual job that pays money?
> Q:    Yes, and then –
> A:    No.
> Q:    – I'll ask you about a job –
> A:    I mean, I –
> Q:    – that doesn't pay money.
> A:    Okay.
> Q:    But you have not worked, since, as I understand it, then, for pay.
> A:    Well, I'm on his payroll.
> Q:    You're still on his payroll?
> A:    Yes.
> Q:    Have you been continuously on his payroll?
> A:    Yes, but I don't actually work, I guess. He just gives me 20 hours of minimum wage just so I can have, you know, money to live, but – so I can get health insurance, but I don't actually do the work. So it's pretty much so I can get health insurance . . . .
> Q:    *So you're telling me you're on the payroll, but you don't do any work.*
> A:    *That's correct.*
> . . .
> Q:    *Are you telling me that you do absolutely no work for him?*
> A:    *Yeah, I mean, I wouldn't be physically able to, anyway, so – . . .*

(T at 355-36)(emphasis added).

Later in the hearing, Plaintiff's attorney asked Plaintiff if he remembered when he stopped working and Plaintiff responded that he "thought it was 2001." (T at 367).

Plaintiff's mother also testified at the hearing and stated that the "last time [Plaintiff]

9

worked was the one year he worked for us [at C.W. Rich] and that was like in 2000 or 2001 maybe, to – I can't remember the exact dates. . . . 2000 to early 2002, maybe." (T at 375). When asked why Plaintiff was on the corporation's payroll, Mrs. Rich explained that "the reason is for health insurance." (T at 375).

### c.    Testimony at Second Hearing

On remand from the Appeals Council, the ALJ conducted a second hearing on January 20, 2009.  At that hearing, Plaintiff's father, Charles Rich, testified that in August of 2001, C.W. Rich set up a "home office" at Plaintiff's residence and that, since that time, Plaintiff worked from his home. (T at 396).  According to Mr. Rich,  Plaintiff performed work from home for C.W. Rich in the form of research, preparing spreadsheets, and real estate analysis. (T at 390).

Mr. Rich stated that Plaintiff did not have a set schedule, but "works when he's able to work." (T at 391, 393).  Mr. Rich explained that the company provided the home office equipment and Plaintiff was able to work whatever hours he felt able to, provided the work was completed "in a reasonable time." (T at 393, 401).  However, he testified that he did not give Plaintiff any deadlines or reminders about completing tasks. (T at 399).  Mr. Rich explained that he had not previously mentioned Plaintiff's "home office" employment arrangement to the Social Security Administration because "[t]hey didn't ask." (T at 406).

Plaintiff testified that he worked at home for CW Rich preparing spreadsheets and researching property via the internet. (T at 408).  Plaintiff estimated that he spent 15 to 20 hours a week performing such duties. (T at 409).  When asked to explain the inconsistency between this testimony and his prior testimony, Plaintiff claimed that he believed prior questions about his work activity were only directed to work performed in an office and, as

such, he did not think to mention his "work at home" job. (T at 412).

> d.   **Analysis**

The ALJ considered the foregoing evidence and concluded that Plaintiff "may have performed some work for C.W. Rich, Inc. at home after August 2001, but that this work was sporadic, with no specific schedule that [Plaintiff] had to maintain in terms of working hours." (T at 28).   Instead, Plaintiff worked whenever he felt up to it, with "no pressure to do any work." (T at 28).   "[T]here was no expectation that [Plaintiff] perform any work and the main goal of having the claimant 'on the books' as an employee was to maintain health insurance coverage." (T at 28).   The ALJ found the testimony offered by Plaintiff and his father at the second hearing not credible, in light of the fact that their claims were directly contradicted by prior written statements and testimony. (T at 28).

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

"In a case involving closely related and closely living individuals claiming an employer-employee relationship, the entire picture of the history and circumstances of the parties must be considered." Oldham v. Sec'y of Health & Human Srvcs., 718 F.2d 507, 510 n. 2 (1st Cir. 1983)(quoting Velez v. Sec'y of Health, Ed., & Welfare, 608 F.2d at 21, 24 (1st Cir. 1979).   The administrative decision will be sustained if it falls within the "range

11

permitted by law." Id. The court's role in the process is to "consider whether the ultimate determination" as to the existence of a *bona fide* employment relationship "is supported by substantial evidence, rather than redetermining the issue itself." Trewhella v. Sec'y of Health & Human Srvcs., No. M84-265CA, 1986 WL 83401, at *1 (W.D. Mich. July 21, 1986)).

In this case, it is difficult to read the varying statements and testimony and not reach the conclusion that Plaintiff and his family were inclined to explain away Plaintiff's earnings as being purely for health insurance purposes when they felt that a lack of work would help obtain benefits; and then decided to change their story after discovering that the lack of work actually rendered Plaintiff ineligible for DIB.  At the very least, this Court finds no reversible error in the ALJ's decision to discount the credibility of their testimony based upon the prior inconsistent statements.

Plaintiff suggests that the ALJ might have improperly considered his work for C.W. Rich "family services" and thus excluded from the definition of employment.  A claimant's work will be deemed "family services" and will not considered employment under the following circumstances: (1) the claimant is under 18 and employed by a parent; (2) the claimant performs "nonbusiness work"[3] or domestic service[4] as an employee of a parent

---

[3]The term "nonbusiness work" means "services that do not promote or advance the trade or business of the employer." 20 C.F.R. § 404.1058 (a)(3)

[4]"Domestic service is work of a household nature done by [the claimant] in or about a private home of the employer. . . . In general, services of a household nature in or about a private home include services performed by cooks, waiters, butlers, housekeepers, governessess, maids, valets, baby sitters, janitors, laundresses, furnacemen, caretakers, handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family use. Pay for these services does not come under this provision unless the services are performed in or about a private home of the employer."  20 C.F.R. §404.1057(b).

while under age 21; (3) the claimant performs nonbusiness work as an employee of his or her son, daughter, or spouse; or (4) the claimant performs domestic service in the private home of his or her son, daughter or spouse as an employee of that son, daughter or spouse (subject to certain exceptions concerning the family status of the claimant's child). 20 C.F.R. § 404.1015 (a).

Work performed for a corporation is specifically excluded from the definition of family services.  20 C.F.R. § 404.1015 (b).  As such, any work that Plaintiff performed for C.W. Rich (a corporation) would not be covered by the family services exclusion.  However, this rule provides no assistance to Plaintiff because there is no nothing in the ALJ's decision to even arguably indicate that he excluded Plaintiff's work for C.W. Rich as "family services."  Rather, as discussed below, the ALJ concluded that Plaintiff, at most, performed sporadic work for the corporation that did not satisfy the common law employment test.  In other words, this was not a case in which the ALJ concluded that the claimant performed work, but then excluded that work as falling within the regulatory definition of "family services."  As such, Plaintiff's argument in this regard is unavailing.

Plaintiff further argues that, although his working environment with C.W. Rich was sheltered in the sense that he was basically permitted to work at his own pace, his employment relationship otherwise satisfied the elements of *bona fide* employment.  This argument is problematic in at least two respects.

First, the ALJ did not find that Plaintiff performed any work for C.W. Rich after August of 2001.  The most the ALJ was willing to find was that Plaintiff "may" have performed some "sporadic" work for C.W. Rich. (T at 28).  In light of the unequivocal written statements and testimony from the first hearing, substantial evidence certainly exists to

13

support the conclusion that Plaintiff performed no work for C.W. Rich after August of 2001.

For example, in a March 2007 statement signed on March 6, 2007, Plaintiff explained that

he "quit" his employment in 2001 "due to conflict" and that while he was paid to work 20

hours a week, he had not worked those hours due to his medical problems. (T at 196).

Plaintiff's father stated that Plaintiff had "not worked at *any* CW Rich office or construction

project after" August of 2001. (T at 197) (emphasis added).  When asked by the ALJ at the

first hearing whether he performed "absolutely no work" for C.W. Rich, Plaintiff answered

in the affirmative.  Thus, substantial evidence exists in the record to support the conclusion

that Plaintiff performed no work whatsoever for C.W. Rich during the relevant time period.

This evidence, standing alone, is sufficient to sustain the ALJ's conclusion.

Second, even accepting the subsequent verison of events offered by Plaintiff and

his father as true (and crediting their rather dubious explanation concerning the inconsistent

between the two versions), the ALJ quite reasonably concluded that there was no bona fide

employment relationship.  Plaintiff had no set schedule and was paid for 20 hours of work

regardless of how many hours he worked, if any.  To wit, although Plaintiff's father

suggested that Plaintiff was required to complete his projects within a "reasonable" time,

he also testified that C.W. Rich did not require Plaintiff to perform work on anything

remotely resembling a set schedule and permitted him to work only when he was "able to

work." (T at 391, 393). Mr. Rich also explained that he did not give Plaintiff any deadlines

or reminders about completing tasks. (T at 399).

The ALJ was undeniably entitled to "examine substance over form with respect to

business transactions and relationships for purposes of the Social Security Act."  Hale v.

Apfel, 19 F. Supp.2d 1022, 1026 (W.D.Mo.1998).  As part of that examination, the ALJ may

14

"'pierce the veil' of fictitious family salary arrangements." Id.  The *sine qua non* of an employment relationship is the understanding that the employee is compensated for work actually performed and there is at least some expectation that the employee might be terminated if the work is either not performed in a satisfactory manner or not performed at all.  Even accepting the "revised" testimony of Plaintiff and his father as true, the ALJ was well within the bounds of his discretion to conclude that no such expectation or understanding existed here.  In other words, Plaintiff was going to receive (and apparently did receive) compensation in a set amount irrespective of whether he performed his work satisfactorily or, indeed, even if he performed no work at all.

Plaintiff further contends that his employment with C.W. Rich fell within the definition of "home worker" under the Social Security regulations.  This argument is unavailing.  First, as discussed above, it is not clear that Plaintiff performed any work at all after August 2001.  Second, even accepting Plaintiff's amended version of the facts as true, he still does not meet the definition of a home worker under the regulations.  A "home worker" is obliged to work "according to the instructions of the [employer], on material or goods furnished by that person, and [is] required to return the finished product to that person." 20 C.F.R. § 404.1008 (d).  Here, Plaintiff was permitted to work whenever he felt able, was given no deadlines or reminders, and was paid for 20 hours of work each week no matter what he actually did.  In Trewella v. Sec'y of Health & Human Srvcs., 1986 WL 83401 at *2, the court noted that the claimant's "post facto opinions regarding her employment status [were] not persuasive."  The court also found that the administrative decision was supported by substantial evidence, noting numerous factors suggesting the lack of a *bona fide* employment relationship, including the fact that the claimant "was not subject to a timeclock

or reporting her hours, and was free to work as few or as many hours as her work required." Id. at *1.

Plaintiff argues that the ALJ erred in assessing the credibility of the witnesses and should have developed the record more fully concerning Plaintiff's alleged employment relationship with C.W. Rich.  Specifically, Plaintiff suggests that the discrepancy in his testimony can be explained by his mental impairments.  This argument might have currency were it not for the numerous contradictory statements (written and testimonial) offered by Plaintiffs' parents.  As outlined above, Plaintiff's parents were quick to dismiss Plaintiff's earnings and to declare that he performed no work when they believed that the lack of work was helpful to Plaintiff's claim for benefits.  The suggestion of a "home office" only appeared after it became clear that proof of employment was necessary to obtain DIB.  As such, even if one excuses Plaintiff's initial testimony that he performed "absolutely no work" for C.W. Rich as the product of mental impairments and/or on honest misunderstanding on Plaintiff's part, the record still contains contradictory statements from Plaintiff's parents concerning the employment issue.

Plaintiff also contends that the ALJ improperly considered C.W. Rich's motive in employing Plaintiff.  According to the Social Security Administration's Programs Operations Manual System ("POMS"), the employer's motive in employing the claimant is not relevant when determining whether an employment relationship exists. POMS RS 02101.115 (L). Specifically, the POMS provides, in pertinent part, as follows: "There may be a clear sign that the purpose of the arrangement was to secure coverage, e.g., worker performed services for a period only long enough for the domestic to acquire insured status. The fact that the worker made the arrangement for such a purpose is not material to the finding that

16

an employment relationship exists."

In the present case, the ALJ noted that "the main goal of having [Plaintiff] 'on the books' as an employee was to maintain health coverage." (T at 28).  This Court finds no error in the ALJ's consideration of the employer's motive.  The POMS provides that motive is not relevant when assessing DIB eligibility *when the existence of a bona fide employment relationship is otherwise present.*  In other words, if the claimant is a common law employee, the fact that the employer's motive in establishing the employment relationship was to obtain DIB eligibility is irrelevant.[5]  However, the first consideration must be satisfied before the motive issue is deemed irrelevant.  There is nothing in the POMS that precludes the ALJ from considering motive when assessing whether a bona fide employment relationship exists in the first instance.  Indeed, consideration of motive would seem to be an important part of this threshold analysis.

As noted above, in cases "involving closely related and closely living individuals claiming an employer-employee relationship, the entire picture of the history and circumstances of the parties must be considered." Oldham, 718 F.2d at 510 n. 2.  Although "an individual can arrange his or her financial matters in a way which will place the individual within the entitlement provisions of the Social Security Act," the business transactions must be "bona fide and real" and the employment relationship "must rest on substance and not form." 81 C.J.S. Social Security and Public Welfare § 59.

In other words, while working for the sole purpose of acquiring DIB eligibility is permssible, the claimant must establish that the alleged employment is real. Cf. Polette v.

---

[5]The POMS also refers to cases in which the employer's motive was to establish DIB eligibility, as opposed to maintaining health insurance coverage.

Chater, 934 F.Supp. 307, 312 (E.D. Mo. 1996). "[F]ictious family salary arrangements" designed to give the appearance of employment will not suffice. Id.; cf. also Heer v. Sec'y of Health & Human Srvcs., 670 F.2d 653, 656 (6th Cir. 1982).

In this case, the ALJ's finding was that the work performed by Plaintiff after August 2001 (if any) was, at best, sporadic, essentially unstructured, and not materially related to his compensation.  These were the key factors in concluding that there was no bona fide employment relationship.  Moreover, as discussed above, substantial evidence in the record (including unequivocal statements from Plaintiff and his father) supports the conclusion that Plaintiff performed no work at all for C.W. Rich during the relevant time period and that his presence on the corporate payroll had no relationship whatever to work actually performed.  This evidence, standing alone, renders Plaintiff's motive argument moot and provides sufficient support for the ALJ's determination.

Lastly, Plaintiff suggests that the ALJ should have developed the record more fully by requesting employment records, reports, and projects performed by Plaintiff.   It is well-settled in this Circuit that in light of the "essentially non-adversarial nature of a benefits proceeding," the ALJ has an affirmative duty to develop the record. Pratts v. Chater, 94 F.3d 34, 37 (2d Cir.1996) (quoting Echevarria v. Secretary of Health and Human Services, 685 F.2d 751, 755 (2d Cir.1982)); see also Shaw v. Chater, 221 F.3d 126, 131 (2d Cir.2000); Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996). "This duty exists even when the claimant is represented." Perez, 77 F.3d at 47.

However, the duty to develop the record is not unlimited and was not violated by the ALJ in this case. The ALJ thoroughly developed the record, which contained numerous written statements from Plaintiff and his father (several of which unambiguously indicated

that Plaintiff had performed no work during the relevant time period), as well as testimony from Plaintiff and his parents.  At a pre-hearing conference held prior to the second hearing, Plaintiff's attorney made it clear that she understood that it was Plaintiff's burden to prove the existence of a *bona fide* employment relationship. (T at 339).  Thus, Plaintiff and his counsel had ample notice and multiple opportunities to prove documentary evidence supporting the alleged employment relationship.  Plaintiff's failure to produce documentation in support of the alleged employment supports the ALJ's conclusion that the alleged employment was not a bona fide employment relationship.  See Raitport v. Apfel, 8 Fed. Appx. 118 (unpublished), 2001 WL 533588, at **3 (2d Cir. May 17, 2001).

Given the substantial evidence already in the record, the ALJ was not obliged to seek out every conceivable shred of proof that might arguably support Plaintiff's case.  In any event, even if such documentation was requested and provided, the ALJ might reasonably have questioned its authenticity, given the inconsistencies in the written and testimonial evidence offered by the Plaintiff and his father.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision. It is clear that the ALJ thoroughly examined the record, afforded appropriate weight to the evidence, and acted well within his discretion when evaluating the credibility of the witnesses. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that

Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   March 2, 2011
             Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE**

**DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**

Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.
March 2, 2011

Victor E. Bianchini
United States Magistrate Judge